IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

COMMUNITY PRESCHOOL & NURSERY
OF EAST LIBERTY,

        Plaintiff(s),

v.

TRI-STATE REALTY, INC.,

        Defendant(s).

09cv0979
**ELECTRONICALLY FILED**

**MEMORANDUM AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT'S PARTIAL MOTION TO DISMISS (DOC. NO. 14)**

Before the Court is defendant Tri-State Reality, Inc.'s ("Tri-State") "Partial Motion to Dismiss" (Doc. No. 14) pursuant to Fed.R.Civ.P. 12(b)(6) and 12(f). After careful consideration of said motion and the briefs in support and in opposition thereto, the Court will grant in part and deny in part Tri-State's Partial Motion to Dismiss.

Plaintiff, Community Preschool & Nursery of East Liberty, LLC, filed a Complaint in this Court, based upon diversity of citizenship, raising Pennsylvania common law claims arising from a fire that allegedly destroyed its business and property, and rendered unusable the first floor premises it had leased from Tri-State, the property owner, to operate a child care facility for pre-school children and infants. Essentially, plaintiff asserts that after it had made substantial improvements to the first floor of the building, including new electrical wiring, and occupied the leased premises on a seven year lease, Tri-State rented the second floor of the building to tenants, even though Tri-State had not procured an occupancy permit for the second floor. Moreover, plaintiff claims that the second floor tenants experienced problems with the electrical service in the second floor, which contained electrical wiring of unknown origin that was not of

commercial quality and "was not up to current building code standards and/or was in need of complete replacement," and that Tri-State leased the second floor when it knew or should have known that the electrical wiring throughout the second floor was "not commercial in nature, was sheathed cable or Romex, and/or [was] not up to current building code standards and was in need of complete replacement."  Complaint, ¶¶ 24-26.

On July 17, 2008, at approximately 8:30 pm, a fire started on the second floor in the ceiling above the space leased and occupied by The Adolescence Preparing 4 Excellence ("APEX") of Pittsburgh, and a City of Pittsburgh fire investigation report attached to the Complaint indicates that the origin of the fire was "an electrical arc caused by faulty wiring in the ceiling" of the APEX office.  Complaint, ¶¶ 28 and 29.  Plaintiff avers that the second floor was destroyed by fire, that the first floor leased premises "was rendered unsuitable for use as a daycare center due to extensive smoke and water damage," and that plaintiff was forced to vacate the premises and discontinue the operation of its business at that location.  Complaint, ¶¶ 32 and 33.

Plaintiff further claims that Tri-State knew or should have known that "occupancy of the second floor of the Building was in violation of the Building Code of the City of Pittsburgh on the basis that the Certificate of Occupancy strictly prohibited occupancy on the second floor of the Building and clearly indicated that the second floor was to remain vacant," that it knew or should have known occupancy of the second floor "created an unreasonable risk of fire as a result of the dangerous condition of the electric wiring throughout the entire second floor," and that Tri-State was "charged with a high degree of care with regard to occupancy on the second floor of the Building, knowing that the first floor of the Building was occupied by up to 60 pre-school

children (ages 2 ½ and older) and 40 infants" each day of the work week.  Complaint, ¶¶ 35-37.

Plaintiff's Complaint states the following common law claims:  Count I, Negligence; Count II, Negligence Per Se; Count III, Trespass, in that Tri-State's "wrongful conduct as set forth above resulted in the direct physical invasion of Plaintiff's property by fire, smoke and water and other hazardous substances entering the Leased Premises thereby contaminating Plaintiff's interest in exclusive and peaceful possession of its business property, business records, furniture and fixtures, and so constituting a trespass." Complaint, ¶ 43-72, 70.  The Complaint seeks compensatory money damages, punitive damages and attorneys fees, among other things.

In light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S.544 (2007), a complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). While *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), allowed dismissal of a claim only if "no set of facts" could support it, under *Twombly,* and most recently, *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 2009 WL 1361536 (2009), a claim for relief under Rule 12(b)(6) now "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S.Ct. at 1950.

In *Iqbal*, the Supreme Court held that a claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendants are liable for the misconduct alleged.  *Marangos v. Swett*, 2009 WL 1803264, *2 (3d Cir. 2009), citing *Iqbal*, 129 S.Ct. 1937, 2009 WL 1361536, *12.  The plausibility standard in *Iqbal* "asks for more than a sheer possibility that a defendant has acted unlawfully." *Swett*, quoting *Iqbal.*  While well-pleaded

factual content is accepted as true for purposes of whether the complaint states a plausible claim for relief, legal conclusions couched as factual allegations or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to an assumption of truth. *Swett*, quoting *Iqbal*, at *13. "Where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, quoting Fed. R. Civ. P. 8(a)(2).

In order to satisfy the requirement of Fed. R. Civ. P. 8(a)(2) that a plaintiff include a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must aver sufficient factual allegations which "nudge" its claims "across the line from conceivable to plausible." *Iqbal*, at 1951.

In considering a Rule 12(b)(6) motion, a court accepts all of the plaintiff's allegations as true and construes all inferences in the light most favorable to the non-moving party. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 n. 8 (3d Cir. 1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).

Therefore, a plaintiff must put forth sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315 (3d Cir. 2008) (citing *Phillips*, 515 F.3d at 224). However, this standard does

not impose a heightened burden on the claimant above that already required by Rule 8, but instead, calls for fair notice of the factual basis of a claim while "rais[ing] a reasonable expectation that discovery will reveal evidence of the necessary element." *Weaver v. UPMC*, 2008 WL 2942139 at *7 (W.D. Pa. 2008) (Standish, J.) (citing *Phillips*, 515 F.3d at 234; and *Twombly*, 550 U.S. at 555).

Count II - Negligence Per Se

Tri-State's Partial Motion to Dismiss asserts that plaintiff's claims for negligence per se and for trespass at Counts II and III should be dismissed with prejudice. Plaintiff agrees that negligence per se is not a separate cause of action in Pennsylvania, and the Court will therefore dismiss Count II with prejudice.

Count III - Trespass

Although plaintiff disputes Tri-State's argument that it failed to state a claim for trespass, the Court agrees with defendant and will dismiss Count III with prejudice. As was recently summarized by a colleague of this Court:

> Pennsylvania law defines trespass as "an unprivileged, intentional intrusion upon land in possession of another." *Graham Oil Co. v. BP Oil Co.*, 885 F.Supp. 716, 725 (W.D. Pa. 1994) (citing *Kopka v. Bell Tel. Co.*, 371 Pa. 444, 91 A.2d 232, 235 (1952). Trespass is an intentional tort, which means that in order for liability to attach, a defendant must have the "intention to enter upon the particular piece of land." *Valley Forge Gardens, Inc. v. James D. Morrissey, Inc.*, 385 Pa. 477, 123 A.2d 888, 891 (1956) (quoting Restatement [(Second) of Torts,] § 163, comment b).

*Boring v. Google, Inc.*, 598 F.Supp.2d 695, 702 (W.D.Pa. 2009) (Hay, USMJ).

Moreover, "one who authorizes or directs another to commit an act which constitutes a trespass to another's land is himself liable as a trespasser to the same extent as if the trespass

5

were committed directly by himself, and this is true even though the authority or direction be given to one who is an independent contractor. . . . 'If, by any act of his, the actor intentionally causes a third person to enter land, he is as fully liable as though he himself enters. Thus, if the actor has commanded or requested a third person to enter land in the possession of another, the actor is responsible for the third person's entry, if it be a trespass." *Kopka v. Bell Telephone Co. of Pa.*, 371 Pa. 444, 450-51, 91 A.2d 232, 235 (1952) (numerous citations omitted).

There are no averments in plaintiff's complaint that even arguably support an inference that Tri-State *intentionally* trespassed on the first floor leased premises or authorized another to do so. The Complaint certainly makes sufficient averments of negligence by alleging Tri-State knew or should have known of the risk caused by renting the second floor with substandard electrical wiring, but, assuming the fire and water damage to the first floor can be deemed an entry onto those premises, the Complaint cannot sustain the inference that defendant intentionally committed such an entry or authorized APEX to do so. Plaintiff argues that Tri-State intentionally leased the premises to APEX and intentionally ignored the Building Code and the "faulty wiring," Brief in Opposition to Defendant's Partial Motion to Dismiss (Doc. No. 19), at 4, but these assertions fall short of the necessary sufficient factual matter, in light of *Twombly* and *Iqbal*, to plausibly show that the "entry" onto plaintiff's premises was intentional.

The Court will therefore dismiss Count III with prejudice, as amendment would be futile.[1]

---

[1] Plaintiff's reliance on *Pagano v. Redev. Auth. of City of Philadelphia*, 249 Pa.Super. 303, 376 A.2d 999 (Pa. Super. 1977) is misplaced. The claim in that case sounded in negligence (i.e., the violation of a duty to maintain non-leased portions of premises in a safe condition), and plaintiff did not raise a claim for common law trespass, although, as was customary in Pennsylvania civil actions at that time, the case was generically a "trespass action" as opposed to an action in "assumpsit." In any event, nothing in *Pagano* suggests that a landlord's violation of a duty to maintain the non-leased portions of the premises in safe condition is, without more, an

<u>Relief Requested - Attorneys Fees, Prejudgment Interest, Punitive Damages</u>

Plaintiff concedes that its claims for attorneys fees and for prejudgment interest should be stricken from the complaint, and the Court will so order.  As to plaintiff's claim for punitive damages, however, the Court agrees with plaintiff that the Complaint arguably supports such damages as remedy for the negligence claim in that it states sufficient factual allegations to *plausibly* support outrageous conduct.

In Pennsylvania, punitive damages may be awarded for conduct that is outrageous by virtue of a defendant's evil motive or reckless indifference to the rights of others.  See *Hutchison v. Luddy*, 582 Pa. 114, 870 A.2d 766 (2005); *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747 (1984).  Punitive damages are penal in nature and may be awarded where the defendant's actions demonstrate willful, wanton or reckless conduct.  *Id*.  The Court cannot say, at this stage of the proceedings, that a claim for punitive damages is implausible.

What makes the averments of the Complaint sufficient to plausibly support punitive damages is that the risk posed by renting property with substandard electrical wiring to tenants located above a day care center for children and infants could be deemed an unacceptably extreme risk of harm, and one that is "utterly intolerable in civilized society."  See *Weaver*, 2008 WL 2942139, at *13 ("A defendant acts recklessly when his conduct creates an unreasonable risk of physical harm to another and such risk is substantially greater than that which is necessary to make his conduct negligent.") (quoting *Phillips v. Cricket Lighters*, 584 Pa. 179, 883 A.2d 439, 445-446 (Pa. 2005); *Reeves v. Middletown Athletic Assoc.*, 866 A.2d 1115, 1123 (Pa. Super. 2005).  The punitive damages claim will not, therefore, be stricken, although defendant may

---

intentional tort, such as trespass.

revisit this issue at the appropriate time following discovery, by a motion for summary judgment.

For the foregoing reasons,

IT IS HEREBY ORDERED that Tri-State Reality, Inc.'s ("Tri-State") "Partial Motion to Dismiss" (Doc. No. 14) is GRANTED IN PART and DENIED IN PART, as more fully set forth above.

SO ORDERED this 6th day of September, 2009.
s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:   All counsel of record